IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER SALVATORE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **3:13-CV-02975** |
| | : | **(Judge Mariani)** |
| BLUE CROSS OF NORTHEASTERN | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.    Introduction

Presently before the Court is a Motion to Dismiss (Doc. 10) filed by Defendant Blue

Cross of Northeastern Pennsylvania in the above-captioned case.  For the reasons

discussed below, the Court will grant the Motion.

### II.    Procedural History

The subject of the present Motion to Dismiss is an Amended Complaint (Doc. 7) filed

by the Plaintiff, Jennifer Salvatore, on January 14, 2014.  In that Complaint, Plaintiff alleged

four causes of action: one for Breach of Contract against Andrew Brown's Drug Store

(Count I) and three against moving Defendant Blue Cross of Pennsylvania, to wit: for

Breach of Contract (Count II), Bad Faith under 42 Pa. Cons. Stat. Ann § 8371 (Count III),

and a violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

§ 1001, *et seq.* (Count IV).

Both Blue Cross and Andrew Brown's Drug Store filed Motions to Dismiss, each of which challenged all the counts alleged against the respective movants. (*See* Doc. 10 (Blue Cross); Doc. 11 (Andrew Brown's).) In response to Andrew Brown's' Motion, Plaintiff conceded that Count I of her Complaint in fact should be dismissed under Third Circuit precedent and accordingly "request[ed] that this Honorable Court allow her to withdraw Count I of her Complaint, alleging a common law breach of contract." (Pl.'s Resp. to Def. Andrew Brown's Drug Store, Inc.'s Mot. to Dismiss, Doc. 19, at 2.) On the basis of this concession—which the Court construed as a statement that Plaintiff concurred in the Motion to Dismiss—the Court granted the Andrew Brown's' Motion and dismissed Count I from the Amended Complaint. (*See* Order, Sept. 10, 2014, Doc. 21, at 2.) This dismissal served to remove Andrew Brown's as a defendant in this case.

The Court's Order did not address Blue Cross's Motion, because it raised different issues from those raised by Andrew Brown's. Now, however, the Court will proceed to an analysis of this remaining Motion to Dismiss.

## III.   Factual Allegations

The Amended Complaint alleges the following well-pleaded facts in connection with the claims against Blue Cross. "On or about May 16, 2008, Plaintiff entered into a verbal agreement for employment with Andrew Brown's with an agreed start date of June 16, 2008." (Am. Compl., Doc. 7, at ¶ 5.) As part of Salvatore's compensation, Andrew Brown's would provide her "with full medical, dental and vision insurance coverage for [her] and her

2

family," though later the policy changed such that "Andrew Brown's would no longer be

paying [its employees'] health insurance premiums in full and that all employees would

henceforth be contributing to their health insurance premiums by way of a withdrawal from

their paycheck." (*Id.* at ¶¶ 6, 11.) Initially, Salvatore's insurance policy was provided by

nonparty Geisinger Health Plan. (*Id.* at ¶ 7.) The policy later switched to Defendant Blue

Cross of Northeastern Pennsylvania, effective September 1, 2010. (*Id.* at ¶ 12.)

> Apparently as part of the change from Geisinger to Blue Cross,

> [o]n or about August 15, 2010, . . . Andrew Brown's['] Office Manager
> presented Plaintiff with Defendant Blue Cross's medical underwriting
> questionnaire, explaining to Plaintiff that as a formality she would need to fill
> out specific sections of the questionnaire, namely, the personal information
> section which included name, address, date of birth, [and] social security
> number.

(*Id.* at ¶ 13.) "On or about August 16, 2010, upon completing the highlighted sections of the

questionnaire, Plaintiff returned the questionnaire to . . . Andrew Brown's." (*Id.* at ¶ 14.)

"Plaintiff signed and dated the medical questionnaire" and thereby "became an insured of

Defendant, Blue Cross," as scheduled, "[o]n or about September 1, 2010." (*Id.* at ¶¶ 16-17.)

Plaintiff only held a policy with Blue Cross for one year; on September 1, 2011, Andrew

Brown's changed its employee group health care coverage back to Geisinger. (*Id.* at ¶ 21.)

During the time that she was covered by the Blue Cross plan, Salvatore "underwent

a cervical fusion surgery at Geisinger Health System in Danville, Pennsylvania," on

November 8, 2010. (*Id.* at ¶ 18.) "Prior to scheduling the surgery, in early October 2010,

Plaintiff contacted Defendant Blue Cross to confirm that the cervical fusion surgery would be

3

covered under her group health care policy." (*Id.* at ¶ 19.) "Defendant Blue Cross confirmed that the surgery would be covered under her group health care policy but that there would be higher deductible fees because Geisinger Health System was an 'out of network' provider." (*Id.* at ¶ 20.)

Approximately one year after her surgery, on November 21, 2011, Blue Cross informed Salvatore by letter that her insurance policy would be rescinded from its inception date of September 1, 2010. (*Id.* at ¶ 25.) This meant that Salvatore would become responsible for all payments for all of the health care services that she obtained in the year that she was purportedly covered by Blue Cross, including her surgery, which totaled over $50,000. (*Id.* at ¶¶ 26, 30.) The letter stated that certain "'concerns' in Plaintiff's application process had prompted a review of her medical records" at which time "a 'misrepresentation' made in the application process had been discovered" that justified rescission. (*Id.* at ¶¶ 27-28.)

Though Plaintiff's Amended Complaint does not directly indicate what the purported "misrepresentation" was, she pleads elsewhere that "[o]n or about May 31, 2008 [i.e., before accepting employment with Andrew Brown's], Plaintiff was a party to a car accident wherein [she] sustained injuries to her neck." (*Id.* at ¶ 8.) Blue Cross submitted further exhibits explaining these alleged misrepresentations as attachments to its Motion to Dismiss. The first is the letter notifying Salvatore of rescission, signed by one Trish Savitsky, Blue Cross's Vice President of Corporate Assurance and Compliance, and dated November 21, 2011.

4

(See Mot. to Dismiss, Doc. 10, Ex. 2, at 1-2.)[1]  This letter informed Salvatore that "[s]ome

concerns were identified with the application process regarding [your] policy which

prompted a review, including a review of your medical records" and that "[u]pon review, it

was determined that on the medical underwriting questionnaire, the information you

provided was not accurate." (Id. at 1.)  The inaccuracies cited were Salvatore's failure to

inform Blue Cross that she "had a motor vehicle accident in May 2008 that caused disc

problems" or that she "had an MRI on January 4, 2010." (Id.)  Salvatore allegedly failed to

disclose this information despite being directed to do so in the questionnaire. (Id.)  As

evidence of these misrepresentations, Blue Cross also submits to the record an excerpt of

Salvatore's insurance application, in which a series of fields prompting the applicant to fill in

medical history are left blank. (See Doc. 10., Ex. 3, at 1.)[2]  According to Savitsky's letter, if

---

[1] Even though the Savitsky letter was not included in Plaintiff's Amended Complaint, the Court can
still consider it here. A "court may consider an undisputedly authentic document that a defendant attaches
as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit
Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Savitsky document is
undisputedly authentic because, though not attached to the *Amended* Complaint, it was attached to the
original one. (See Compl., Doc. 1-2, Ex. A.) Plaintiff's claims are also based on it, as evidenced by the fact
that she quotes from it at various times in the Amended Complaint. (See Am. Compl. at ¶¶ 27-28, 62.)
Indeed, at one point in the Amended Complaint, Plaintiff quotes from the letter and states "See Exhibit A."
(See id. at ¶ 28.) Though the letter is not in fact attached to the Amended Complaint and is only offered as
"Exhibit A" to the original Complaint, this reference indicates that such omission may only have been an
oversight.

[2] The question of whether this document can be admitted under *Pension Benefit*, note 1, *supra*, is
a much closer one. Plaintiff discusses the "medical questionnaire" referenced in Savitsky's letter in her
Amended Complaint, (see Am. Compl. at ¶¶ 13-16), but, whereas she alleges there that she received and
completed that questionnaire on August 15 and 16, 2010 respectively, (id. at ¶¶ 13-14), the questionnaire
that Defendant submitted is dated July 12, 2010, (see Doc. 10, Ex. 3, at 1). It is unclear whether the two
separate filings refer to separate questionnaires or whether the difference in dates is only the result of one
party's error.

Nonetheless, even if this Court were to reject Exhibit 3 at the Motion to Dismiss stage, Plaintiff
nowhere states in her Amended Complaint that the defects she quoted Savitsky as citing, (Am. Compl. at

Case 3:13-cv-02975-RDM   Document 22   Filed 09/15/14   Page 6 of 15

this information had "been disclosed, this medically underwritten policy's rates would have

increased." (Doc. 10, Ex. 2, at 1.)

## IV.    Standard of Review[3]

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

¶¶ 27-28, 62), were untrue. Indeed, at numerous points in her Amended Complaint she appears to indicate that Savitsky was correct that this information was not included in whatever initial documents she submitted to Blue Cross. Thus, at one point she states that "Plaintiff put Defendant on notice of her medical condition prior to having the cervical fusion surgery." (*Id.* at ¶ 53.) The only conversation mentioned in the Amended Complaint to which this could possibly refer is Plaintiff's statement that "in early October 2010, Plaintiff contacted Defendant Blue Cross to confirm that the cervical fusion surgery would be covered under her group health care policy." (*Id.* at ¶ 19.) By stating that it was this conversation—which occurred after she became Defendant's insured—that put Defendant on notice of her medical history, Plaintiff admits that she omitted this information from her initial application. Likewise, she states elsewhere that "Defendant acted in bad faith by blindly accepting Plaintiff's application for insurance coverage." (*Id.* at ¶ 50.) This statement appears to suggest that it was somehow wrong for Defendant to assume that Plaintiff's statements were true "only" on the basis that she signed a contract stating that they were. Of course, Defendant could only have been wrong to make this assumption if Plaintiff's application was somehow untrue. Therefore, by asserting Defendant's error, Plaintiff logically implies that portions of her application were indeed untrue.

Therefore, while the Court believes that Exhibit 3 may be properly considered at the motion to dismiss stage under *Pension Benefit*, even if the Exhibit were not allowed to be considered, there are ample allegations in the pleadings to suggest that Salvatore did in fact omit material information from her insurance application. The question of whether this information is proven by inferences from the pleadings or by Defendant's Exhibit 3 is accordingly only an academic one.

[3] In discussing the standard of review, Plaintiff cites to the standards set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), wherein the Supreme Court held that "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" is sufficient to survive a Rule 12(b)(6) motion to dismiss, *Conley*, 355 U.S. at 47, 78 S. Ct. at 103, and that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *id.* at 45-46, 78 S. Ct. at 102. (*See* Pl.'s Resp. to Def. Blue Cross's Mot. to Dismiss, Doc. 18, at 5-6.) However, the Supreme Court has subsequently replaced *Conley*'s holding with more rigorous pleading standards. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007). Therefore, it is now the line of cases discussed in Section IV of this Opinion, and not those which follow from *Conley*, that set forth the appropriate standard of review of Defendant's Motion.

6

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

7

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and

quotation marks omitted). This "plausibility" determination will be a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## V.   Analysis

### a.   Counts II and III

Blue Cross's Motion to Dismiss first challenges Counts II and III of the Amended

Complaint (for breach of contract and bad faith, respectively). (*See* Doc. 10 at 13-17.) In

her response, Plaintiff likewise expresses a desire to withdraw these claims, which she now

believes to be precluded by Third Circuit precedent, just as she did for Count I of her

Amended Complaint against Andrew Brown's Drug Store. (*See* Doc. 18 at 3.)

The Court construed Plaintiff's previous request to withdraw the Count against

Andrew Brown's as a statement that Plaintiff concurred in Andrew Brown's Motion to

Dismiss, and therefore dismissed that Count without prejudice. (Doc. 21 at 2.) The

circumstances giving rise to Plaintiff's request for dismissal of Counts II and III are

8

substantially the same as those which the Court found to warrant dismissal of Count I

without prejudice. Accordingly, consistent with its previous Order, the Court now dismisses

Counts II and III without prejudice.

### b. Count IV

This leaves only Count IV. Plaintiff alleges Count IV under ERISA, a statute that

"comprehensively regulates, among other things, employee welfare benefit plans that,

'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care,

or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41, 44, 107 S. Ct. 1549, 1551, 95 L. Ed. 2d 39 (1987) (quoting 29

U.S.C. § 1002(1)). The employee benefit plans that it covers include that which Plaintiff

allegedly maintained with Blue Cross. (*See* Am. Compl. at ¶¶ 63-64.) This means:

any plan, fund, or program which was heretofore or is hereafter established or
maintained by an employer or by an employee organization, or by both, to the
extent that such plan, fund, or program was established or is maintained for
the purpose of providing for its participants or their beneficiaries, through the
purchase of insurance or otherwise . . . medical, surgical, or hospital care or
benefits, or benefits in the event of sickness, accident, disability, death or
unemployment, or vacation benefits, apprenticeship or other training
programs, or day care centers, scholarship funds, or prepaid legal services.

29 U.S.C. § 1002(1).

ERISA further provides a cause of action for the policyholders of such plans. It

states, in relevant part, that a "civil action may be brought—by a participant or beneficiary . .

. to recover benefits due to him under the terms of his plan, to enforce his rights under the

Case 3:13-cv-02975-RDM   Document 22   Filed 09/15/14   Page 10 of 15

terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29

U.S.C. § 1132(a)(1)(B), or

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
> which violates any provision of this subchapter or the terms of the plan, or (B)
> to obtain other appropriate equitable relief (i) to redress such violations or (ii)
> to enforce any provisions of this subchapter or the terms of the plan.

*Id.* at § 1132(a)(3).

Plaintiff claims that Blue Cross violated her rights under her policy when it decided to

rescind the entire policy rather than pursuing alternative remedies. (*See* Am. Compl. at ¶¶

66-68.) Relying on the Eighth Circuit case *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660

(8th Cir. 2007), she argues that Blue Cross should have chosen to retroactively increase her

policy rates instead of rescinding. (Am. Compl. at ¶¶ 67-68.) In this regard, *Werdehausen*

held that previous Eighth Circuit case law "permits but does not require retroactive

rescission" of an ERISA employee benefit plan when the policyholder made innocent

material nondisclosures during the enrollment process. *Werdehausen*, 487 F.3d at 665.

However, it also held that "[w]hen the benefit plan makes alternative remedies available, the

benefits decision-maker [i.e., Blue Cross in the instant case] must act in accordance with its

duties as an ERISA fiduciary in choosing among those remedies," such that it could be

liable for choosing rescission if a better option was available. *Id.* This is in keeping with

ERISA's provision that an entity which, among other things, "exercises any discretionary

authority or discretionary control respecting management of [a] plan or exercises any

authority or control respecting management or disposition of its assets" or "has any

10

discretionary authority or discretionary responsibility in the administration of such plan," 29

U.S.C. § 1002(21)(A)(i), (iii), is a fiduciary subject to the common law and statutory duties of

a trustee acting for the benefit of its beneficiary-policyholders, *see Cent. States, Se. & Sw.*

*Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570, 105 S. Ct. 2833, 2840, 86 L.

Ed. 2d 447 (1985).[4]

To the Court's knowledge, *Werdehausen* has never been adopted by the courts of

the Third Circuit. Nonetheless, its holding is consistent with the general law of fiduciaries

under ERISA, which requires, among other things, "that a fiduciary 'discharge his duties with

respect to a plan solely in the interest of the participants and beneficiaries and for the

exclusive purpose of providing benefits to participants and their beneficiaries." *Edmonson*

*v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013) (quoting 29 U.S.C. §

1104(a)(1)) (internal alterations omitted).

As stated above, *Werdehausen* itself limited its holding to situations where "the

benefit plan makes alternative remedies available." *Werdehausen*, 487 F.3d at 665.

Plaintiff, however, has not alleged that the benefit plan does make alternative remedies

available. Instead, the only relevant allegation that she offers concerns Trish Savitsky's

rescission letter, mentioned above. (Am. Compl. at ¶ 62.) According to Plaintiff, Savitsky's

statement that "'[h]ad certain information been disclosed, this medically underwritten policy's

---

⁴ At the Motion to Dismiss stage, because Plaintiff alleges claims related to fiduciary duties, (*see* Am. Compl. at ¶¶ 75-76), the Court assumes—without deciding—that Blue Cross's actions in administering Plaintiff's policy in fact involve the exercise of discretion and therefore make it a fiduciary under ERISA. Such a determination should not be taken to preclude an argument, after discovery has proceeded, that Blue Cross did not in fact meet the legal definition of an ERISA fiduciary.

rates would have been increased,' indicat[ed] clearly that rescission of the policy was not Defendant Blue Cross of Northeastern Pennsylvania's only remedy." (*Id.* (quoting Doc. 10, Ex. 2, at 1).)

But this is an implausible reading of Savitsky's statement. On its face, the statement only says that, if Salvatore had initially provided complete information in her medical questionnaire, her policy would have cost more, because her preexisting medical conditions would render her more costly to insure. This statement alone has nothing to do with whether Blue Cross had the power under the terms of the plan to retroactively and unilaterally change the policy rate and then bill Salvatore or Andrew Brown's for the balance. It is of course possible that the policy gives Blue Cross the power to do this, and, if so, it is arguable that a retroactive increase in premiums would have better accorded with Blue Cross's fiduciary duties than rescission. But if such policy terms exist, they are nowhere alleged in the Amended Complaint or contained in any of the indisputably authentic documents on which the Amended Complaint relies that have been submitted to the Court thus far. Accordingly, the Court cannot agree with Plaintiff that the allegations contained in Amended Complaint adequately allege an ERISA violation.

Nor are Plaintiff's other arguments availing. First, she argues that "she had no reason to provide insufficient or misleading information regarding her medical history and had no reason to submit an intentionally false application to Blue Cross of Northeastern Pennsylvania in that she was joining a group plan and as such was guaranteed coverage

notwithstanding any prior medical condition." (*Id.* at ¶ 70.) But even if Plaintiff had no discernible reason to make misrepresentations on her application, this does not change the fact—as attested elsewhere in her Amended Complaint and the documents submitted along with it—that she *did* make misrepresentations which appear, without specific factual allegations to the contrary, to justify rescission. *Cf. McBride v. Hartford Life and Accident Ins. Co.*, 2007 WL 5185293, at *18 (E.D. Pa. 2007) ("Under federal common law [authorized under ERISA, *see Dedeaux*, 481 U.S. at 56, 107 S. Ct. at 1558], 'a misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question.' *Shipley*[ *v. Arkansas Blue Cross and Blue Shield*], 333 F.3d[, 898,] 904 [(8th Cir. 2003)]. *An applicant's good faith response is irrelevant. Tingle*[ *v. Pac. Mut. Ins. Co.*], 837 F. Supp. [191,] 193 [(W.D. La. 1993)].") (emphasis added).

Second, Plaintiff argues that, by contacting Blue Cross approximately one month before her operation to inquire as to whether the operation would be covered, Blue Cross was put on notice of her medical condition, (Am. Compl. at ¶ 53), or at least on notice that it should investigate her file for misrepresentations, (*id.* at ¶ 71). Again, it is possible that *if* Plaintiff actually informed Blue Cross during this conversation that she had preexisting medical conditions not disclosed on her initial questionnaire *and if* other remedies short of rescission were permissible under the terms of Plaintiff's policy, then Blue Cross could have committed an ERISA violation by failing to modify the policy at that time. However, there is no indication in the Amended Complaint that either of these contingencies actually applied.

13

As to the former, Plaintiff nowhere alleges that she actually informed Blue Cross of any misrepresentations or omissions. Rather, all that she alleges is that she "contacted Defendant Blue Cross to confirm that the cervical fusion surgery would be covered under her group health care policy" and that Blue Cross confirmed that it would be. (*Id.* at ¶ 19-20.) Merely inquiring whether coverage exists under an existing policy does not, without more, imply that the existing policy is based on misrepresentations. Indeed, common sense and business necessity dictate that an insurance company should assume that policyholder information submitted to it is accurate, and that it need not conduct an independent fraud investigation every time a policyholder makes an inquiry about an existing policy.

For all of these reasons, Plaintiff's Amended Complaint fails to state a claim for an ERISA violation. However, leave to amend is not futile, because it would allow Plaintiff a final opportunity to provide the missing information enumerated in this Opinion that would be sufficient to make her ERISA claim cognizable. Accordingly, the Court will allow Plaintiff leave to amend Count IV. A second amended complaint should set forth the specific policy provisions that justify a remedy short of rescission, any statements that Plaintiff made that reasonably put Blue Cross on notice of her medical conditions before the time that Blue Cross claims to have discovered them in Savitsky's rescission letter, and/or any other well-pleaded factual allegations that demonstrate that rescission was inappropriate, consistent with this Opinion.

14

## VI.    Conclusion

For the foregoing reasons, Defendant Blue Cross of Northeastern Pennsylvania's

Motion to Dismiss (Doc. 10) is **GRANTED**.  A separate Order follows.

Robert D. Mariani
United States District Judge